**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| In re: **PARAQUAT PRODUCTS LIABILITY LITIGATION** | Case No. **3:21-md-3004-NJR** |
| | **MDL No. 3004** |
| **This Document Relates to:** | |
| *Dale Smith v. Chevron U.S.A. Inc.; Chevron Phillips Chemical Co. LP; Chamberlin Distributing Co., Inc.; Northwest Wholesale, Inc.; Syngenta Corp Protection, LLC; and Syngenta AG*, No. 3:25-pq-01221-NJR | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

The federal removal statute requires defendants to act quickly. Ordinarily, a defendant may remove a case within 30 days of service or receipt of an "initial pleading." 28 U.S.C. § 1446(b)(1). When a case becomes removable after this window expires (*e.g.,* because a diversity-destroying party drops out of the case several months after it was filed), the 30-day removal clock begins to run when "an amended pleading, motion, order or other paper" demonstrates removability. *Id.* § 1446(b)(3). But when removability is based on diversity of citizenship—as it is here—a defendant can be precluded from removal altogether if the jurisdictional predicate for removal is established too late. Specifically, diversity cases may *not* be removed "more than 1 year after commencement of the action." *Id.* § 1446(c)(1). If more than a year passes, removal is only possible if "the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." *Id.*

Here, Defendants Syngenta Crop Protection, LLC ("Syngenta") and Chevron

U.S.A. Inc. ("Chevron") removed the case from the Superior Court of Washington for King County based on diversity more than three years after it was filed. (Doc. 1). Smith promptly moved to remand—first in the United States District Court for the Western District of Washington (Doc. 19) and then in this Court (Doc. 37)—after the Judicial Panel on Multidistrict Litigation ("JPML") transferred the case to this district for consolidation within the Paraquat multidistrict litigation (*In re Paraquat Prods. Liab. Litig.*, 3:21-md-03004-NJR) (Doc. 35). No one disputes that Defendants' notice of removal was filed more than one year after commencement of the action. The resolution of Smith's remand motions therefore boils down to whether he prevented removal in bad faith.

### BACKGROUND

This action, like thousands of others in this MDL, asserts that Smith developed Parkinson's disease because of his exposure to paraquat, a weed killer. Smith alleges that from 1973 or 1974 until 1987, he used paraquat in connection with various jobs he had. In 1997, Smith was diagnosed with Parkinson's disease, which has caused him significant pain and suffering. In April 2021, Smith began suspecting paraquat as a potential cause of his Parkinson's disease.

On June 21, 2021, Smith filed this action in the King County Superior Court, naming Chevron, Syngenta, Chamberlin Distributing Company, Inc. ("Chamberlin"), and Northwest Wholesale, Inc. ("Northwest") as Defendants.[1] (Doc. 1-5). Smith, Chamberlin, and Northwest are citizens of Washington. Syngenta and Chevron are not.

---

[1] Smith also named Syngenta AG and Chevron Phillips Chemical Company LP as Defendants in his original complaint. He voluntarily dropped those entities from the case in October 2021. *See* (Notice of Removal, n.1 (Doc. 1)).

Chamberlin was eventually dismissed, which left Northwest as the only in-state defendant in the case. (Doc. 1-2).

As the case advanced in King County, Smith sought extensive discovery from Northwest. He propounded three sets of interrogatories, two sets of requests for production, requests for admission, expert interrogatories and requests for production, and contention interrogatories. Smith also filed several motions adverse to Northwest including two motions to compel, a motion to strike the disclosure of a primary witness, and a motion for leave to serve additional interrogatories. Smith's attorney then deposed Northwest's corporate representative on September 25, 2024. Once discovery was complete, Smith filed a 27-page opposition to Northwest's motion for summary judgment. (Doc. 37-1, pp. 177-203).

The King County Superior Court set the case for trial in May 2025. On February 11, 2025, Northwest filed a motion to continue the trial date because it had hired a new attorney who needed more time to get up to speed. Smith, fearing that his day in court could be delayed, urged his attorneys to pursue a settlement with Northwest. Smith sought an "expedited settlement" with Northwest to ensure his case would be tried in May 2025. (*Id.*, pp. 2-5 (Decl. of Charles P. Stern)).

On February 20, 2025, Smith filed a notice of settlement with Northwest in the King County Superior Court. (Doc. 1-3). The notice informed the court that it no longer needed to rule on Northwest's motion for a continuance because the settlement had rendered it moot. (*Id.*). The court agreed and kept the May 2025 trial date in place. (Doc. 37-1, p. 147).

With Northwest and Chamberlin out of the case, Chevron and Syngenta removed the case to the Western District of Washington on March 11, 2025, invoking diversity jurisdiction under 28 U.S.C. § 1332(a). (Doc. 1). The dismissal of the only two in-state Defendants, they argued, established complete diversity so that the case could proceed in federal court. Smith moved to remand, arguing that Defendants' notice of removal came nearly four years after the case was filed and was thus untimely under section 1446(c)(1).[2] While Smith's remand motion was pending in the Western District of Washington, the JPML transferred the case to this Court for consolidation within the paraquat MDL. (Doc. 35). Once here, Smith filed a second motion to remand the case to the King County Superior Court, raising essentially the same arguments he offered in his first motion. (Doc. 37).

### LEGAL STANDARD

A defendant may "remove a civil action from state court when a district court has original jurisdiction over the action." *Micrometl Corp. v. Tranzact Techs., Inc.*, 656 F.3d 467, 470 (7th Cir. 2011). "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States." 28 U.S.C. § 1332(a)(1). Even where the statutory requirements for diversity jurisdiction under § 1332(a) are met,

---

[2] Smith also raises two subsidiary arguments in support of remand: (1) that complete diversity was not established when Defendants removed the case; and (2) that Defendants' notice of removal was untimely under 28 U.S.C. § 1446(b)(3), which requires the notice to be filed within 30 days of service or receipt of "an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable" (he argues that Defendants had received papers demonstrating removability more than 30 days before they removed the case). The Court does not reach these arguments because the lack of demonstrated bad faith by Smith is dispositive of his remand motions.

however, the forum defendant rule bars removal based on diversity jurisdiction under section 1332(a) "if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2).

The party invoking federal jurisdiction has the burden of establishing that it exists. *See Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402, 404 (7th Cir. 2004) (a removing defendant must demonstrate a "reasonable probability" that subject-matter jurisdiction exists). As such, "a plaintiff's choice of forum is presumed valid, and the Court must resolve any doubts about jurisdiction in favor of remand." *D.C. ex rel. Cheatham v. Abbott Labs. Inc.*, 323 F. Supp. 3d 991, 993 (N.D. Ill. 2018) (citing *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 758 (7th Cir. 2009)).

## DISCUSSION

Syngenta and Chevron removed this case based on diversity of citizenship, which requires opposing parties to a lawsuit to be completely diverse. *See* 28 U.S.C. § 1332(a); *City of E. St. Louis v. Netflix, Inc.*, 83 F.4th 1066, 1070 (7th Cir. 2023) ("Complete diversity exists only if none of the defendants has the same citizenship as any plaintiff."). They argue that Northwest's settlement and subsequent dismissal from the case gave them the green light for removal because it left only them and Smith in the case and none of them shared the same citizenship. Their notice of removal, however, was filed more than one year after commencement of the action. So, unless they can demonstrate that Smith acted in bad faith to prevent removal, their removal was untimely. *See* 28 U.S.C. § 1446(c)(1).

Defendants argue that Smith perniciously kept Northwest in the case for as long as possible because it acted as a diversity spoiler, not because he intended to assert viable

claims against it. Only when Northwest's presence in the case threatened to postpone the May 2025 trial did Smith settle his claims against it. And when he did, Defendants surmise, he released Northwest in exchange for a paltry sum. *See* (Notice of Removal, ¶ 17 (Doc. 1) (claiming settlement with Northwest "almost certainly involved an insignificant sum")). So, Smith, according to Defendants, acted in bad faith when he engineered a non-diverse constellation of party opponents that precluded removal until the eleventh hour.

The Seventh Circuit does not appear to have spoken on the precise legal framework governing a bad faith analysis under the removal statute. Some district courts in this circuit have explained the inquiry as demanding a "causal link" between the plaintiff's conduct and the prevention of removal. *See e.g.*, *McNeil v. Omni Hotels Mgmt. Corp.*, No. 1:24-cv-00737, 2025 WL 939430, at *4 (S.D. Ind. Mar. 28, 2025); *Henning v. Barranco*, No. 21-cv-1657, 2021 WL 5578767, at *3 (N.D. Ill. Nov. 30, 2021). This approach requires a showing that the "plaintiff has acted in bad faith *in order to prevent* a defendant from removing an action." *Id.* (quoting *Herron v. Graco*, No. 3:16-CV-00653, 2016 WL 7239915 (S.D. Ill. Dec. 15, 2016) (alteration omitted)). Thus, "the bad faith exception does not apply when other factors could have motivated the plaintiff's actions." *Id.* (citation modified).

The Northern District of Illinois has also drawn parallels between bad faith and fraudulent joinder, though it was careful not to conflate the two. *See McVey v. Anaplan, Inc.*, No. 19-cv-07770, 2020 WL 5253853, at *3 (N.D. Ill. Sept. 3, 2020). The fraudulent joinder doctrine holds that "an out-of-state defendant's right of removal premised on

diversity cannot be defeated by joinder of a nondiverse defendant against whom the plaintiff's claim has no chance of success." *Morris v. Nuzzo*, 718 F.3d 660, 666 (7th Cir. 2013) (quotation marks omitted). Bad faith is understood to be conceptually broader than fraudulent joinder because it does not depend on the plaintiff's assertion of a non-viable claim against the in-state defendant. *McVey*, 2020 WL 5253853, at *3. Nevertheless, "[t]here could . . . be scenarios where bad faith and fraudulent joinder are congruent, and proof of fraudulent joinder simultaneously satisfies the requirements for bad faith." *Id.* The *McVey* court examined the removing party's bad faith claim through this lens and found that although the state court had *twice* dismissed a claim against the in-state defendant, there was no indication that it was "frivolous" and had no chance of success. *Id.* at *4. Rather, because the plaintiff had diligently pursued the claim, including by amending her complaint to address the first dismissal and then appealing the second dismissal, her conduct did not support a finding of bad faith. *Id.*

What binds these authorities together appears to be a recognition that bad faith in the removal context depends on whether the plaintiff is acting solely to secure the in-state defendant's *presence* in the case, rather than to advance a claim against them. *See McNeil*, 2025 WL 939430, at *4 (no bad faith where plaintiff actively pursued discovery and litigated case against in-state defendant); *Henning*, 2021 WL 5578767, at *4 (same even though plaintiff should have been "more diligent" in serving in-state defendant); *McVey*, 2020 WL 5253853, at *4 (same because plaintiff's "behavior" suggested she "genuinely intend[ed] to litigate" against in-state defendant).

Defendants aver that Northwest was a mere pawn in Smith's master plan to ensure

he could litigate the case with a home court advantage. But this argument overlooks critical facts that show several years of active litigation against Northwest. Smith propounded eight sets of written discovery upon it, took its corporate representative's Rule 30(b)(6) deposition, and filed at least four adverse discovery motions against it. Then at the close of discovery, Smith submitted a 27-page response to Northwest's motion for summary judgment. These are hardly the actions of a plaintiff who doesn't care about the viability of his claims against the defendant. Smith put Northwest through the ringer in discovery and forced it to valiantly defend itself. So, if Northwest was only in the case to spoil complete diversity, Smith had a strange way of showing it.

It is true that Smith wanted to litigate in state court and Northwest helped him do so. But there is nothing wrong with a plaintiff asserting claims against an in-state defendant to enjoy the ancillary benefit of litigating the case in his preferred forum. *See Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 35 (2025) ("The plaintiff is 'the master of the complaint,' and therefore controls much about her suit. She gets to determine which substantive claims to bring against which defendants. And in so doing, she can establish—or not—the basis for a federal court's subject-matter jurisdiction. She may, for example, name only defendants who come from a different State, or instead add one from her own State and thereby destroy diversity of citizenship.") (internal citation omitted). So, while Smith may have benefited from Northwest's presence in the case until three months before trial, that does not mean he acted in bad faith.

As the parties invoking federal subject matter jurisdiction, it was Syngenta and Chevron's burden to demonstrate its existence. They have not done so because the record

does not establish bad faith conduct by Smith. Thus, their notice of removal was untimely under 28 U.S.C § 1446(c)(1) and the case must be remanded.

CONCLUSION

For these reasons, the Motions to Remand (Docs. 19, 37) filed by Plaintiff Dale Smith are **GRANTED**. This action is **REMANDED** to the Superior Court of Washington for King County. Defendants' Joint Motion to Stay pending MDL Transfer (Doc. 4) and their Motion to Strike Smith's Motion for Sanctions (Doc. 39) are **DENIED as moot**.

**IT IS SO ORDERED.**

**DATED:  June 10, 2026**

**NANCY J. ROSENSTENGEL**
**United States District Judge**